Rick Klingbeil, OSB #933326
RICK KLINGBEIL, PC
1826 NE Broadway
Portland, OR 97232
Tel: (503) 490-6763
rick@klingbeil-law.com

Brady Mertz, OSB #970814
BRADY MERTZ, PC
685 Church St. NE
Salem, OR 97301
Tel: (503) 385-0121
brady@bradymertz.com

Myles McGuire, Pro Hac Vice forthcoming
Andrew T. Heldut, Pro Hac Vice forthcoming
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
aheldut@mcgpc.com

Attorneys for Plaintiff and Proposed Class

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **EVETTE TAN**, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>**COLUMBIA SPORTSWEAR COMPANY**, an Oregon corporation; **COLUMBIA BRANDS USA, LLC**, an Oregon limited liability company; and **PRANA LIVING, LLC**, an Oregon limited liability company,<br><br>Defendants. | Case No. 3:26-cv-1170<br><br>**CLASS ACTION ALLEGATION COMPLAINT**<br><br>Oregon Unlawful Trade Practices Act, Unjust Enrichment, Money Had and Received.<br><br>(28 U.S.C. § 1332(d))<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Evette Tan ("Plaintiff"), individually and on behalf of others similarly situated, by and through her undersigned counsel, and for her Class Action Complaint against Defendants Columbia Sportswear Company ("Columbia Sportswear"), Columbia Brands USA, LLC ("Columbia Brands USA"), and Prana Living, LLC ("Prana Living") (collectively, "Columbia" or "Defendants"), alleges as follows based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation by counsel and review of public documents as to other matters.

## NATURE OF THE ACTION

1.   This is an action for damages and any other available legal or equitable remedies, for violations of the Oregon Unlawful Trade Practices Act ("UTPA"), Unjust Enrichment, and Money Had and Received, resulting from Defendants' practice of charging their customers inflated prices in response to unlawfully imposed tariffs.

2.   This lawsuit arises from Defendants' retention of windfall profits generated as a consequence of the unlawful tariffs imposed by the Trump Administration under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 et seq. This windfall is a direct result of Defendants systematically passing on the costs of IEEPA tariffs to their own customers—including Plaintiff—through elevated product prices.

3.   Beginning on February 1, 2025, President Donald J. Trump issued Executive Orders 14193, 14194, and 14195 imposing IEEPA-based duties on certain imports from Canada, Mexico, and China, respectively. On February 5, 2025, he issued Executive Order 14200 amending the duties addressing the synthetic opioid supply chain in the People's Republic of China. On March 3, 2025, he issued Executive Order 14228 further amending

those duties. He later issued Executive Order 14245 on March 24, 2025 concerning tariffs on countries importing Venezuelan oil, and Executive Order 14257 on April 2, 2025 declaring a national emergency based on large and persistent United States goods trade deficits and imposing reciprocal tariffs on a broad range of trading partners. See Exec. Order No. 14193, 90 Fed. Reg. 9,113 (Feb. 1, 2025); Exec. Order No. 14194, 90 Fed. Reg. 9,117 (Feb. 1, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9,121 (Feb. 1, 2025); Exec. Order No. 14200, 90 Fed. Reg. 9,277 (Feb. 5, 2025); Exec. Order No. 14228, 90 Fed. Reg. 11,463 (Mar. 3, 2025); Exec. Order No. 14257 (Apr. 2, 2025); Exec. Order No. 14245 (Mar. 24, 2025) (collectively, the "Tariff Executive Orders").

4.    The Tariff Executive Orders imposed an array of frequently changing duties ranging from 10% to 145% (with the upper end reflecting the maximum cumulative IEEPA-based rate applied to certain Chinese-origin goods, comprised of a 125% reciprocal duty under Executive Order 14257 as amended and an additional 20% IEEPA fentanyl duty under Executive Order 14228) based on country-specific tariff policy dictated through published Executive Orders. See Exec. Order 14257, 90 Fed. Reg. 15,041 (Apr. 7, 2025); Exec. Order No. 14,259, 90 Fed. Reg. 15,509 (Apr. 8, 2025); Exec. Order No. 14,266, 90 Fed. Reg. 15,625 (Apr. 9, 2025).

5.    A study by Federal Reserve Bank of New York researchers finds that "U.S. firms and consumers continue to bear the bulk of the economic burden of the high tariffs

imposed in 2025."[1] Indeed, the study found that "nearly 90 percent of the tariffs' economic burden fell on U.S. firms and consumers" rather than foreign exporters. Although the stated purpose of the Tariff Executive Orders was to address international trade deficits and other national-emergency concerns, the economic burden of the tariffs was substantially passed on to American consumers in the form of increased retail prices.

6.    When goods are imported into the United States, the United States Customs and Border Protection ("CBP") assesses and collects tariffs on those goods based on the Harmonized Tariff Schedule of the United States. Pub. L. No. 100-418, 102 Stat. 1107 (1988). An importer may receive a refund for tariffs through administrative protest under 19 U.S.C. § 1514, refund under 19 U.S.C. § 1520, judicial action in the U.S. Court of International Trade under 28 U.S.C. § 1581(i), or, with respect to IEEPA-related tariffs, through CBP's Consolidated Administration and Processing of Entries ("CAPE") refund process launched on April 20, 2026.

7.    Defendants paid IEEPA tariffs when they imported the products Plaintiff and similarly situated consumers purchased. To offset the cost of paying IEEPA tariffs, Defendants passed those costs on to Plaintiff and similarly situated consumers by inflating the prices of their products.

8.    On February 20, 2026, the United States Supreme Court held that the IEEPA does not authorize the President to impose the tariffs at issue. Learning Res., Inc. v. Trump,

---

[1] Mary Amiti, Chris Flanagan, Sebastian Heise, and David E. Weinstein, Who Is Paying for the 2025 U.S. Tariffs?, Federal Reserve Bank of New York (Feb. 12, 2026), https://libertystreeteconomics.newyorkfed.org/2026/02/who-is-paying-for-the-2025-u-s-tariffs/.

607 U.S. ___, 2026 WL 477534 (2026) (Nos. 24-1287 and 25-250) (aff'g V.O.S. Selections, Inc. v. United States, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025), aff'd in part, vacated in part, 149 F.4th 1312 (Fed. Cir. 2025) (en banc)).

9.   As a result, any IEEPA tariffs charged to Defendants were unlawful for lack of statutory authorization, and Defendants are entitled to seek refunds for any tariffs they paid pursuant to the Tariff Executive Orders through either litigation in the U.S. Court of International Trade, the CAPE refund process, or other administrative refund procedures.

10.   On December 21, 2025—two days before the U.S. Court of International Trade entered Administrative Order 25-02 imposing an automatic stay on new IEEPA refund actions—Defendants Columbia Brands USA, LLC and Prana Living, LLC themselves filed a protective refund action in the U.S. Court of International Trade. Columbia Brands USA, LLC and Prana Living, LLC v. U.S. Customs and Border Protection, Court No. 25-00855 (Ct. Int'l Trade Dec. 21, 2025) (Eaton, J.). In that pleading, signed by counsel of record subject to Rule 11 of the Rules of the United States Court of International Trade, Columbia Brands USA, LLC and Prana Living, LLC affirmatively allege that they are "importers of merchandise into the U.S. subject to the challenged duties," that they are "responsible for paying these tariffs on their imported goods," and that they "have paid IEEPA duties." Columbia Brands USA, LLC v. United States, No. 25-00855, Compl. ¶¶ 1, 2, 16 (Ct. Int'l Trade Dec. 21, 2025). The Columbia Brands USA and Prana Living plaintiffs further seek "a full refund from Defendants of all IEEPA duties Plaintiffs have already paid to the United States as a result of the executive orders challenged in this lawsuit, as well as those they will continue to pay," id. ¶ 7, and ask the

U.S. Court of International Trade to "order the United States to refund to Plaintiffs the IEEPA duties collected on those entries, with interest as provided by law," id. Prayer ¶ f.

11. On December 22, 2025, Columbia Brands USA, LLC and Prana Living, LLC moved to consolidate their action with AGS Co. Automotive Solutions v. U.S. Customs and Border Protection, Court No. 25-00255 (Ct. Int'l Trade), as lead case. On December 23, 2025, the action was stayed pursuant to Administrative Order 25-02. On April 20, 2026, the Court of International Trade granted the motion to consolidate. Defendants' own pleading—signed by counsel of record subject to Rule 11 of the Rules of the United States Court of International Trade—confirms that Defendants Columbia Brands USA and Prana Living are importers of record for merchandise imported into the United States subject to IEEPA duties, that they paid IEEPA tariffs to CBP on that merchandise, and that they are actively pursuing refunds of those tariffs. Because Columbia Brands USA and Prana Living are the Columbia Sportswear Company subsidiaries responsible for importing Columbia-, Mountain Hardwear-, SOREL-, and prAna-branded products for the U.S. market, the imported merchandise referenced in Defendants' pleading comprises goods sold under those brands.

12. Defendants Columbia Brands USA, LLC and Prana Living, LLC have further admitted, in a corporate-disclosure statement signed by counsel of record and filed in the Court of International Trade pursuant to USCIT Form 13, that they are each "indirect wholly owned subsidiaries of Columbia Sportswear Company, a public company traded on Nasdaq." Columbia Brands USA, LLC v. United States, No. 25-00855, Form 13 Corporate Disclosure Statement (Ct. Int'l Trade Dec. 21, 2025).

13. Defendant Columbia Sportswear Company has further admitted, in its Quarterly Report on Form 10-Q filed with the U.S. Securities and Exchange Commission for the fiscal quarter ended March 31, 2026 (SEC Accession No. 0001050797-26-000089, filed May 7, 2026), that "At the time the IEEPA tariffs were ruled unconstitutional, the Company had already paid approximately $80 million of IEEPA tariffs." Columbia Sportswear further reported that, "As of March 31, 2026, approximately $55 million of that amount has been realized through cost of sales, with the remainder in inventory" and that "the Company has begun the process of requesting refunds of IEEPA tariffs paid." Columbia Sportswear acknowledged that, as of the date of the report, it "ha[d] not received any portion of the IEEPA tariff refunds which it requested." Columbia Sportswear Company, Form 10-Q for the Quarterly Period Ended March 31, 2026, at 13 (filed May 7, 2026).

14. However, Defendants have already passed their unlawful IEEPA tariff burdens onto Plaintiff and the Class Members by charging elevated prices that incorporated their tariff burden. Plaintiff and the Class Members were thereby deprived of money paid to Defendants for unlawful IEEPA tariffs.

15. Although Defendants have affirmatively sought refunds of the IEEPA tariffs they paid through the protective action they filed in the U.S. Court of International Trade, see supra ¶ 10, Defendants have made no public commitment to return any portion of those anticipated tariff refunds to the consumers who, through elevated prices, bore the economic burden of those tariffs. To the contrary, on Columbia Sportswear's May 1, 2026 first-quarter 2026 earnings call—just over two months after the Supreme Court's Learning

Resources decision—Columbia Sportswear Company's Chairman and Chief Executive Officer Timothy P. Boyle told analysts and investors that the Company had "paid a total of approximately $80 million in IEEPA tariffs," that the Company had "already taken action by submitting [its] refund claims," and that the Company "fully intend[s] to pursue every avenue available to secure the refunds that [it] [is] owed."

16.    Defendant Columbia Sportswear Company has further admitted, in its Quarterly Report on Form 10-Q for the fiscal quarter ended September 30, 2025 (SEC Accession No. 0001050797-25-000160, filed November 6, 2025), certified by its Chief Executive Officer and Chief Financial Officer pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 and 18 U.S.C. § 1350, that "[f]or Spring 2026, we increased U.S. pricing by a high-single digit percent, and we are maintaining similar price increases for the Fall 2026 season." Columbia Sportswear acknowledged that this pricing action was undertaken so that, "[w]hen combined with other mitigation tactics, our goal in 2026 is to offset the dollar impact of higher tariffs." Columbia Sportswear Company, Form 10-Q for the Quarterly Period Ended September 30, 2025, at 26.

17.    If Defendants receive a refund for the IEEPA tariffs, Defendants will have been provided a windfall as a result of already having charged consumers for the collection of unlawful IEEPA tariffs. Defendants' retention of money obtained from charging consumers for IEEPA tariffs offends public policy, is oppressive, and causes substantial injury to consumers by depriving them of the cost of the unlawful IEEPA tariffs.

18.    The value of IEEPA tariff refund claims is not merely speculative. Even before the Supreme Court issued its decision in Learning Resources, a robust secondary market

had emerged in which distressed investors and hedge funds have purchased IEEPA tariff refund claims from importers at a discount in exchange for immediate liquidity.[2] Market participants estimate that importers paid roughly $180 billion in IEEPA tariffs in the aggregate; claims have reportedly traded at approximately 45 cents on the dollar; and the head of one trading desk active in these claims has described the trading opportunity as "a $40 billion opportunity" and "a low estimate" at that.

19.    The existence and active trading of these claims confirms that the tariff refunds Defendants are positioned to recover represent concrete, quantifiable economic value—not hypothetical future benefits—and that Defendants' anticipated double recovery at consumers' expense is both real and imminent.

20.    Other corporations in Defendants' same position have enacted tariff refund programs to compensate their customers who paid higher prices for products and thus bore the burden of pass-through tariff costs.[3] For example, on UPS's April 28, 2026 first-quarter 2026 earnings call, UPS's Chief Executive Officer Carol Tomé stated that UPS had remitted to the U.S. government approximately $5 billion in IEEPA tariffs that it had collected from its customers as the importer of record, that UPS was "working with the Customs Border Protection to apply for those refunds," and that "as soon as we get that money, we're going to remit it right back to our customers." FedEx separately stated it

---

[2]Wall Street Is Betting on Tariff Refunds After Supreme Court Ruling, NPR (Mar. 5, 2026), https://www.npr.org/2026/03/05/nx-s1-5736120/tariff-refunds-wall-street-trade.

[3]Jeannette Neumann, Cards Against Humanity to Give Tariff Refunds to Buyers Who "Overpaid," Crain's Chicago Business (Feb. 25, 2026), https://www.chicagobusiness.com/consumer-products/cards-against-humanity-give-tariff-refunds/. See also UPS, FedEx will give tariff refunds back to customers that could be worth more than $5 billion, Fortune (Apr. 29, 2026) (reporting on UPS's April 28, 2026 earnings call), https://fortune.com/2026/04/29/fedex-ups-pledging-tariff-refunds-back-to-customers/.

would refund corresponding tariff costs to its customers. Defendants could have enacted a similar payback program for Plaintiff and the Class Members yet have not done so.

21.    At minimum, once IEEPA tariff refunds, reliquidation, or other recovery became available, Defendants' retention of tariff-related amounts paid by consumers became unfair, oppressive, and substantially injurious because Defendants retained the benefit of both consumer pass-through payments and the corresponding refund rights or proceeds.

22.    Accordingly, Plaintiff brings this action individually and on behalf of similarly situated individuals to seek redress for violations of the Oregon Unlawful Trade Practices Act ("UTPA"), as well as common-law unjust enrichment and money had and received, and for such other equitable and legal relief as is appropriate, including the imposition of a constructive trust over any IEEPA tariff refund proceeds Defendants receive from the United States.

## PARTIES, JURISDICTION & VENUE

23.    Plaintiff Evette Tan is a resident of the State of Illinois. During the Class Period, Plaintiff purchased a Columbia Sportswear-branded product imported, distributed, and sold by Defendants that was subject to tariff-related price increases directly tied to IEEPA tariffs that Defendants paid and passed through to her. Plaintiff did not create a user account on, place an order through, or otherwise transact business via the website located at the domain columbia.com, and accordingly is not bound by the terms of use posted on that website.

24.    Defendant Columbia Sportswear Company is an Oregon domestic business corporation, incorporated on February 3, 1961, registered with the Oregon Secretary of State, Corporation Division, under Registry Number 065993-10. Its principal place of business and mailing address is 14375 NW Science Park Drive, Portland, Oregon 97229. Its registered agent for service of process in Oregon is United Agent Group Inc., 7185 SW Sandburg Street, Suite 110, Portland, Oregon 97223. Columbia Sportswear Company is a publicly traded company whose common stock is listed on the Nasdaq Global Select Market under the ticker symbol "COLM" and which files annual, quarterly, and current reports with the U.S. Securities and Exchange Commission (SEC Central Index Key 0001050797). Its Chairman and Chief Executive Officer is Timothy P. Boyle, and its Executive Vice President and Chief Financial Officer is Jim A. Swanson.

25.    Defendant Columbia Brands USA, LLC is an Oregon domestic limited liability company registered with the Oregon Secretary of State, Corporation Division, under Registry Number 179952-91. Columbia Brands USA, LLC was originally formed on October 24, 2003 under the name "Columbia Sportswear USA Corporation," and was converted from a corporation to a limited liability company and renamed "Columbia Brands USA, LLC" on December 28, 2015. Its principal place of business is 14375 NW Science Park Drive, Portland, Oregon 97229. Its registered agent for service of process in Oregon is United Agent Group Inc., 7185 SW Sandburg Street, Suite 110, Portland, Oregon 97223. Its managers of record are Timothy P. Boyle and Peter J. Bragdon. As Columbia Brands USA has admitted in its corporate-disclosure filing in the U.S. Court of International Trade, Columbia Brands USA, LLC is an indirect wholly owned subsidiary

of Defendant Columbia Sportswear Company. Columbia Brands USA, LLC v. United States, No. 25-00855, Form 13 Corporate Disclosure Statement (Ct. Int'l Trade Dec. 21, 2025).

26. Defendant Prana Living, LLC is an Oregon domestic limited liability company registered with the Oregon Secretary of State, Corporation Division, under Registry Number 791979-93, having been formed on or about August 9, 2011. Its stated business activity of record is the "design and market[ing of] apparel and accessories." Its principal place of business is 14375 NW Science Park Drive, Portland, Oregon 97229. Its registered agent for service of process in Oregon is United Agent Group Inc., 7185 SW Sandburg Street, Suite 110, Portland, Oregon 97223. Prana Living, LLC's sole member of record is Columbia Brands Holding Company (Oregon Registry Number 1023050-91), whose principal place of business is likewise 14375 NW Science Park Drive, Portland, Oregon 97229, and which is itself an Oregon-organized indirect wholly owned subsidiary of Defendant Columbia Sportswear Company. As Prana Living has admitted in its corporate-disclosure filing in the U.S. Court of International Trade, Prana Living, LLC is therefore an indirect wholly owned subsidiary of Defendant Columbia Sportswear Company. Columbia Brands USA, LLC v. United States, No. 25-00855, Form 13 Corporate Disclosure Statement (Ct. Int'l Trade Dec. 21, 2025).

27. Defendants are responsible for the importation, pricing, marketing, distribution, and sale of products sold under the Columbia®, Mountain Hardwear®, SOREL®, and prAna® brands in the United States, including the apparel, footwear, accessories, and equipment that Plaintiff purchased. As confirmed by Defendants

Columbia Brands USA, LLC and Prana Living, LLC in their own December 21, 2025 pleading in Columbia Brands USA, LLC v. United States, No. 25-00855 (Ct. Int'l Trade), Defendants Columbia Brands USA and Prana Living are importers of record for merchandise imported into the United States subject to IEEPA duties, and paid IEEPA tariffs to U.S. Customs and Border Protection on those imports. As reflected in Columbia Sportswear Company's Annual Report on Form 10-K for fiscal year 2025, the products Defendants import and sell under the Columbia®, Mountain Hardwear®, SOREL®, and prAna® brands are sourced from countries that were subject to IEEPA tariffs, including Vietnam, Bangladesh, Indonesia, India, and China.

28.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from at least one Defendant.

29.    As Columbia Sportswear has separately disclosed in its Q1 fiscal year 2026 Quarterly Report on Form 10-Q filed with the SEC on May 7, 2026, the Company had paid approximately $80 million in IEEPA tariffs as of the time those tariffs were ruled unconstitutional, which on its own substantially exceeds the CAFA amount-in-controversy threshold. Additionally, Columbia Sportswear's Annual Report on Form 10-K for the fiscal year ended December 31, 2025 reports consolidated net sales of approximately $3,397.4 million for fiscal year 2025, of which approximately $1,979 million (representing

approximately 58 percent of consolidated net sales) was attributable to its United States operating segment.

30.  The Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding Defendants' obligation to return to the consumers who paid them the IEEPA duties and fees Defendants collected, as well as any IEEPA duty refunds Defendants recover from the United States.

31.  This Court has personal jurisdiction over each Defendant. Defendants are each "at home" in Oregon for purposes of general personal jurisdiction under Daimler AG v. Bauman, 571 U.S. 117 (2014): Defendant Columbia Sportswear Company is incorporated under the laws of the State of Oregon and has maintained its principal place of business in Oregon since its incorporation in 1961; Defendants Columbia Brands USA, LLC and Prana Living, LLC are each Oregon limited liability companies whose principal place of business is in Oregon. Independent of general jurisdiction, each Defendant has purposefully availed itself of the privilege of conducting business activities in Oregon, is registered with the Oregon Secretary of State, and has maintained a registered agent for service of process in Oregon at all relevant times.

32.  Venue is proper under 28 U.S.C. § 1391 because each Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District. Venue in the Portland Division is appropriate under Local Rule 3-2 because Defendant Columbia Sportswear Company's corporate headquarters and the principal places of business of all three Defendants are located in Washington County, Oregon (with Portland, Oregon as

their postal address), and a substantial part of the corporate-level pricing decisions, tariff payments, and refund-claim activity giving rise to Plaintiff's claims occurred at that headquarters.

## COMMON FACTS

### Defendants' Business Model and Supply Chain

33.    Defendants advertise, market, sell, and distribute consumer products throughout the United States, including in this District. Defendants distribute and sell Columbia-, Mountain Hardwear-, SOREL-, and prAna-branded apparel, footwear, accessories, and equipment in their own brand-operated retail stores and outlet stores, through their brand-operated e-commerce websites located at columbia.com, mountainhardwear.com, sorel.com, and prana.com, and through national and regional wholesale retailers (including Dick's Sporting Goods, REI, Backcountry, Cabela's, Bass Pro Shops, Scheels, Academy Sports, Sportsman's Warehouse, Macy's, Kohl's, Amazon, and others), as well as Defendants' branded mobile applications.

34.    Per Columbia Sportswear Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2025 (SEC Accession No. 0001050797-26-000028), filed with the U.S. Securities and Exchange Commission on February 25, 2026, during fiscal year 2025 approximately 35 percent of Columbia's apparel, accessories, and equipment products were produced in Vietnam, approximately 30 percent were produced in Bangladesh, approximately 10 percent were produced in Indonesia, and approximately 10 percent were produced in India. During the same period, approximately 80 percent of

Columbia's footwear products were produced in Vietnam, with approximately 10 percent produced in China. The remaining production was distributed across other countries.

35.    Columbia Sportswear further disclosed, in its Quarterly Report on Form 10-Q for the fiscal quarter ended September 30, 2025 (SEC Accession No. 0001050797-25-000160), that "[f]or our Spring 2025 and Fall 2025 inventory combined, we sourced roughly 32% of our footwear raw materials and roughly 31% of our apparel raw materials for the U.S. market from China." Columbia Sportswear Company, Form 10-Q for the Quarterly Period Ended September 30, 2025, at 43. Accordingly, even where finished goods were assembled in other countries, a substantial portion of the raw-material inputs to Defendants' U.S.-bound apparel and footwear were sourced from China, a country whose imports were subject to among the highest IEEPA-based tariff rates during the Class Period.

36.    As Defendants Columbia Brands USA, LLC and Prana Living, LLC themselves confirmed in their December 21, 2025 pleading in Columbia Brands USA, LLC v. United States, No. 25-00855 (Ct. Int'l Trade), Columbia Brands USA, LLC and Prana Living, LLC are each importers of record for merchandise entering the United States subject to IEEPA duties—merchandise that, given those entities' roles within the Columbia Sportswear corporate family, comprises Columbia-, Mountain Hardwear-, SOREL-, and prAna-branded products—and paid IEEPA tariffs to U.S. Customs and Border Protection on those imports.

37. Upon information and belief, the product Plaintiff purchased during the Class Period was imported from abroad either during or after the IEEPA tariff period and was subject to IEEPA tariffs when imported.

**Defendants' Pass-Through of IEEPA Tariffs to Consumers**

38. For purposes of this Complaint, the "Class Period" is defined as February 4, 2025 through February 24, 2026, the period during which the IEEPA Tariff Executive Orders were in effect, beginning on the effective date of the first such order and ending on February 24, 2026, the date by which the IEEPA tariffs at issue had ceased to be applied to imports in the wake of the U.S. Supreme Court's February 20, 2026 decision in Learning Resources, Inc. v. Trump, 2026 WL 477534 (U.S. Feb. 20, 2026).

39. Defendant Columbia Sportswear Company has publicly admitted, in a quarterly disclosure to the SEC certified by its Chief Executive Officer and Chief Financial Officer pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1350, that it raised the U.S. consumer prices of its products in direct response to the IEEPA tariffs. Specifically, in Columbia Sportswear's Quarterly Report on Form 10-Q for the fiscal quarter ended September 30, 2025, Columbia Sportswear disclosed that "[f]or Spring 2026, we increased U.S. pricing by a high-single digit percent, and we are maintaining similar price increases for the Fall 2026 season," and that "[w]hen combined with other mitigation tactics, our goal in 2026 is to offset the dollar impact of higher tariffs." Columbia Sportswear Company, Form 10-Q for the Quarterly Period Ended September 30, 2025, at 26.

40. In its Quarterly Report on Form 10-Q for the fiscal quarter ended June 30, 2025 (SEC Accession No. 0001050797-25-000131, filed August 7, 2025), Columbia Sportswear separately disclosed that "[f]or 2026, we are implementing strategies to offset the impact of higher U.S. tariffs on our business. Our goal is to offset higher tariffs over time through a combination of actions including price increases, vendor negotiations, SG&A expense efficiencies and other mitigation tactics." Columbia Sportswear Company, Form 10-Q for the Quarterly Period Ended June 30, 2025, at 24.

41. In its Quarterly Report on Form 10-Q for the fiscal quarter ended March 31, 2026 (SEC Accession No. 0001050797-26-000089), Columbia Sportswear Company further confirmed that, "At the time the IEEPA tariffs were ruled unconstitutional, the Company had already paid approximately $80 million of IEEPA tariffs," of which approximately $55 million "ha[d] been realized through cost of sales" by March 31, 2026, "with the remainder in inventory." The Company has "begun the process of requesting refunds of IEEPA tariffs paid" but had not as of the date of that filing "received any portion of the IEEPA tariff refunds which it requested."

42. On Columbia Sportswear's May 1, 2026 first-quarter fiscal year 2026 earnings call, Defendant Columbia Sportswear Company's Chairman and Chief Executive Officer Timothy P. Boyle confirmed: "As of the date they were terminated, we have paid a total of approximately $80 million in IEEPA tariffs." Mr. Boyle further confirmed that the Company had "already taken action by submitting [its] refund claims" and that the Company "fully intend[s] to pursue every avenue available to secure the refunds that [it] [is] owed."

43.    Defendant Columbia Sportswear Company had previously acknowledged the magnitude of its tariff exposure. On Columbia Sportswear's October 30, 2025 third-quarter fiscal year 2025 earnings call, Mr. Boyle told analysts and investors that, "[i]n 2024, the company was the 81st largest duty payer in the United States of all companies." He further explained that this was "because our commodities are so heavily tariffed, not only in the U.S. but globally," and that the Company has "a large team that does nothing but help us make products in locations that can be advantaged from a duty standpoint."

44.    Defendants' own statements regarding the disposition of expected refunds confirm Defendants' intent to retain those refunds rather than return them to the consumers who economically bore the tariffs. On Columbia Sportswear's May 1, 2026 earnings call, when asked what the Company plans to do with any IEEPA refunds it recovers, Mr. Boyle stated that the Company has its "standard allocation of capital rules that we use, which will follow," that "[s]ome of our vendors were contributors along the line" to the Company's tariff mitigation whom the Company "want[s] to make sure . . . are well taken care of," and that the Company is "going to be leaning on [its] historical capital allocation plans." Mr. Boyle further confirmed that the anticipated refund recoveries are not included in Defendants' plans for 2026: "we clearly haven't contemplated those in our plans for '26." Defendants have made no public commitment to return any portion of the recovered refunds to consumers.

45.    Upon information and belief, Defendants' pricing decisions affecting Defendants' wholesale prices to authorized retailers, manufacturer's suggested retail prices, minimum advertised pricing, direct-to-consumer prices on Defendants' branded e-

Page 19 — CLASS ACTION ALLEGATION COMPLAINT

commerce websites, and direct-to-consumer prices in Defendants' branded retail and outlet stores for Columbia-, Mountain Hardwear-, SOREL-, and prAna-branded products were influenced by anticipated and actual IEEPA tariff costs beginning in or around February 2025, when the first IEEPA Executive Orders were issued, and continuing throughout the Class Period.

46.    Throughout the Class Period, Defendants passed the cost of IEEPA tariffs onto consumers, including Plaintiff and Members of the Class, by inflating the prices of goods Defendants sold under the Columbia®, Mountain Hardwear®, SOREL®, and prAna® brands.

47.    During the Class Period, Plaintiff purchased a Columbia Sportswear-branded product from a Columbia Sportswear store. For this transaction, Defendants set or directly influenced the prices charged through their wholesale pricing, manufacturer's suggested retail pricing, minimum advertised pricing, direct-to-consumer pricing in their own branded stores and websites, and other pricing practices, and embedded the cost of IEEPA tariffs into those prices.

**Plaintiff's Transaction**

48.    Within the Class Period, Plaintiff purchased her Columbia Sportswear-branded product from a Columbia Sportswear store located at 5220 Fashion Outlets Way Ste 1035, Rosemont, IL 60018, a direct channel through which Defendants distribute, market, and sell their products and in which Defendants' wholesale pricing, manufacturer's suggested retail pricing, minimum advertised pricing, or other pricing practices governed or materially influenced the retail prices charged to Plaintiff.

49.     On or about February 16, 2026, Plaintiff purchased a Defendant-branded product, specifically Columbia Ski Pants, MSRP approximately $99.20. Such purchase was made at a Columbia Sportswear store during the Class Period and during the period the IEEPA tariffs were in effect. Plaintiff paid the prices Defendants set, established, or directly influenced for this product.

50.     On information and belief, the prices Plaintiff paid for the product described in the preceding paragraph reflected Defendants' tariff-related pricing decisions, including Defendants' wholesale pricing, manufacturer's suggested retail pricing, minimum advertised pricing, or other pricing practices set, influenced, or implemented by Defendants.

51.     On information and belief, the product Plaintiff purchased was imported into the United States by or for Defendants from countries subject to IEEPA tariffs (including Vietnam, Bangladesh, Indonesia, India, or China) during the period in which those tariffs were in effect. The product-level import origin, importer-of-record information, tariff classification, entry data, duty-payment records, and any records reflecting whether IEEPA tariff costs were incorporated into retail pricing are within Defendants' possession, custody, or control, and Defendants Columbia Brands USA, LLC and Prana Living, LLC have confirmed their status as importers of record for merchandise subject to IEEPA duties in their December 21, 2025 pleading in Columbia Brands USA, LLC v. United States, No. 25-00855 (Ct. Int'l Trade).

52.     Defendants paid IEEPA tariffs on the items that Plaintiff purchased and embedded the cost of those tariffs in the prices charged to Plaintiff. But for Defendants'

pass-through of IEEPA tariff costs, Plaintiff would have paid lower prices for the product she purchased.

53. Defendants' retention of the unlawful IEEPA tariff costs that were passed on to Plaintiff and the Class Members offends public policy as it is unconscionable and unfair for Plaintiff and similarly situated consumers to shoulder Defendants' tax burden under the IEEPA tariffs when those tariffs were unlawful and should not have been collected.

54. As a result of Defendants' practice of passing on tariff costs to their customers, Plaintiff and the Class Members were forced to pay Defendants' tax burdens because Defendants passed the unlawful IEEPA tariffs on to them.

55. Plaintiff and the members of the Class have unequal bargaining power with Defendants and were unable to negotiate the payment of the unlawful IEEPA tariffs from Defendants, and therefore Plaintiff and the Class Members could not avoid paying the unlawful IEEPA tariffs.

56. Allowing Defendants to keep the proceeds of the unlawful IEEPA tariff charges deprives Plaintiff and Members of the Class of the money paid for the cost of the unlawful IEEPA tariffs while providing nothing of value to Plaintiff or the Class's Members.

57. But for Defendants charging Plaintiff and the Members of the Class the cost of the unlawful IEEPA tariffs, Plaintiff and the Members of the Class would not have needed to shoulder the cost of the unlawful IEEPA tariffs.

**Defendants' Anticipated Tariff Refunds and Resulting Double Recovery**

58.   On March 4, 2026, Senior Judge Richard K. Eaton of the U.S. Court of International Trade issued a significant order in Atmus Filtration, Inc. v. United States, directing U.S. Customs and Border Protection to refund duties imposed under IEEPA. Atmus Filtration, Inc. v. United States, No. 26-01259, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026) (Eaton, J.); see also id. (Amended Order dated Mar. 20, 2026); id. (amended order dated Mar. 27, 2026).

59.   The Court of International Trade in Atmus reinforced that all importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the Supreme Court's decision in Learning Resources. The Court ordered CBP to liquidate all unliquidated entries "without regard to the IEEPA duties" and to reliquidate any liquidated entries for which liquidation is not final without regard to those duties. On March 27, 2026, the court issued an amended order expanding that directive to entries for which liquidation had become final. On April 6, 2026, the Atmus Filtration plaintiff filed a notice of voluntary dismissal, and the Court of International Trade designated Euro-Notions Florida, Inc. v. U.S. Customs and Border Protection, Court No. 25-00595 (Ct. Int'l Trade), as the new lead refund-supervision case, issuing a parallel order on April 7, 2026.

60.   According to the declaration of Brandon Lord, the Executive Director of the Trade Programs Directorate within the Office of Trade at U.S. Customs and Border Protection, filed in Atmus Filtration on March 6, 2026 (ECF No. 31), as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA was approximately $166 billion. Atmus, ECF No. 31 at ¶ 12.

61. On April 20, 2026, CBP launched the Consolidated Administration and Processing of Entries ("CAPE") refund process within its Automated Commercial Environment system to administer refunds of IEEPA tariffs to importers of record, with applicable statutory interest. According to CBP's status report to the U.S. Court of International Trade dated May 12, 2026 (reporting data as of May 11, 2026), more than 15.1 million entries had passed CAPE validations and been accepted for IEEPA duty removal, approximately 8.3 million of those entries had been liquidated or reliquidated without IEEPA duties, and the estimated duty refund and interest amount associated with those liquidated and reliquidated entries was approximately $35.46 billion. The refund program continues to expand. As importers of record for Columbia-, Mountain Hardwear-, SOREL-, and prAna-branded products imported into the United States during the Class Period, Defendants are eligible to file CAPE refund claims and to receive substantial refunds of the IEEPA tariffs they paid.

62. Accordingly, Defendants are entitled to substantial refunds for IEEPA tariffs they paid as the importers of record for goods sourced from Vietnam, Bangladesh, Indonesia, India, China, and other countries subject to IEEPA tariffs, and have affirmatively sought such refunds in Columbia Brands USA, LLC v. United States, No. 25-00855 (Ct. Int'l Trade Dec. 21, 2025), and through the CAPE process. Defendant Columbia Sportswear has separately confirmed, both in its Form 10-Q filed for the quarter ended March 31, 2026 and on its May 1, 2026 earnings call, that it has "submitted [its] refund claims" and intends to "pursue every avenue available to secure the refunds that [it] [is] owed."

63. To date, Plaintiff is unaware of any public commitment by Defendants to establish any mechanism to refund to consumers the tariff costs Defendants passed through to them via elevated prices and import charges during the Class Period.

64. This presents an obvious problem: Although Defendants will recover or are positioned to recover tariff refunds on the tariffed goods they sold, Defendants' customers have already borne the economic brunt of these tariffs by paying higher prices set by Defendants. The risk of Defendants obtaining double recovery is therefore imminent.

65. Defendants are poised to be paid twice for the same unlawful tariff burden: once by their customers (including Plaintiff) through elevated prices and import charges, and once by the U.S. government through tariff refunds.

## CLASS ACTION ALLEGATIONS

66. Plaintiff brings her claims individually and on behalf of the following Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

67. Class: All persons in the United States who, between February 4, 2025 and February 24, 2026, purchased one or more Columbia-, Mountain Hardwear-, SOREL-, or prAna-branded apparel, footwear, accessories, or equipment products from a retail or online channel at a price set, established, or directed by Defendants during that period. Plaintiff reserves the right to seek certification of an Oregon-resident subclass for the UTPA claim and a nationwide subclass for the common-law claims if necessary or appropriate.

68. Excluded from the Class are: (1) Defendants; (2) Defendants' officers, directors, members, and managers, those persons' immediate families, and the successors

and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action, their staff, and the members of their families; (4) persons who properly and timely request exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defendants' counsel, and their experts and consultants.

69.    Numerosity. The proposed class contains members so numerous that separate joinder of each member of the class is impracticable. Upon information and belief, there are at least hundreds of thousands of proposed class members. The individuals who purchased Columbia-, Mountain Hardwear-, SOREL-, or prAna-branded products during the Class Period can be ascertained through records in the possession, custody, or control of Defendants and their authorized retailers.

70.    Commonality and Predominance. There are questions of fact and law common to the class, which common questions predominate over any questions affecting only individual members, including but not limited to the following:

- Whether Defendants paid IEEPA tariffs on products sold to consumers during the Class Period;
- Whether Defendants passed IEEPA tariff costs onto consumers through elevated prices;
- Whether Defendants' retention of the unlawful IEEPA tariffs paid by Plaintiff and the Class Members is unlawful, deceptive, unfair, unethical, and unscrupulous;
- Whether Defendants misled consumers regarding pricing and tariff pass-through;

- Whether Defendants violated the Oregon Unlawful Trade Practices Act through their misrepresentations and omissions regarding pricing and tariff pass-through;
- Whether Defendants unjustly enriched themselves as a result of the unlawful conduct alleged above;
- Whether Defendants have been or will be unjustly enriched by receiving government refunds for tariffs they passed through to consumers;
- Whether any IEEPA tariff refunds received by Defendants from the United States are held in constructive trust for the benefit of the Class; and
- Whether the Class members are entitled to restitution, actual damages, statutory damages, and attorneys' fees and costs.

71. Adequacy of Representation. Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff understands the obligations inherent in representing a putative class, and the corresponding duties. Plaintiff has retained counsel competent and experienced in complex and class action litigation. Plaintiff has no interests antagonistic to the Class's interests, and Defendants have no defenses unique to Plaintiff.

72. Typicality. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class purchased Defendant-branded products at prices that incorporated the cost of IEEPA tariffs Defendants paid and passed through to consumers. Plaintiff's claims and the claims of all members of the Class arise from the same course of conduct by Defendants—namely, Defendants' pass-through of unlawful IEEPA tariff costs to consumers through elevated prices and Defendants' retention of both those tariff-pass-through payments and the corresponding refund rights or proceeds.

73.    Rule 23(b)(2) Basis. Defendants have acted on grounds generally applicable to the Class by uniformly pricing Columbia-, Mountain Hardwear-, SOREL-, and prAna-branded products to incorporate IEEPA tariff costs and by uniformly retaining the corresponding refund rights or proceeds. Final declaratory relief, including a declaration that any IEEPA tariff refunds Defendants receive are held in constructive trust for the Class, and corresponding injunctive relief prohibiting dissipation, transfer, or commingling of those proceeds are therefore appropriate with respect to the Class as a whole.

74.    Appropriateness and Superiority. This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and because joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

## CLAIMS FOR RELIEF

## COUNT I

## VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT

## ORS 646.605 et seq.

## (ON BEHALF OF PLAINTIFF AND THE CLASS)

75. Plaintiff incorporates the foregoing allegations as if fully stated herein.

76. Each Defendant is a "person" engaged in "trade" or "commerce" within the meaning of the Oregon Unlawful Trade Practices Act, ORS 646.605 et seq. (the "UTPA").

77. Defendants engaged in the conduct complained of throughout this Complaint at their headquarters in Washington County, Oregon (with a Portland, Oregon mailing address), located at 14375 NW Science Park Drive, and their decisions and conduct uniformly impacted residents of Oregon and residents throughout the United States.

78. Defendants engaged in unlawful trade practices in violation of ORS 646.608 in connection with the sale of consumer goods, including the Defendant-branded apparel, footwear, accessories, and equipment purchased by Plaintiff, under, inter alia, the following provisions of ORS 646.608(1):

79. (a) ORS 646.608(1)(e), in that Defendants represented through their pricing decisions and contemporaneous public statements that the prices charged for Defendant-branded products reflected lawfully imposed and lawfully collectible tariff costs, when in fact the IEEPA tariffs giving rise to those price increases were imposed without statutory authority and were subject to ongoing legal challenges;

80. (b) ORS 646.608(1)(s), in that Defendants made false or misleading representations of fact concerning the reasons for the prices they charged, by attributing

tariff-driven price increases to lawfully imposed tariffs while concealing that those tariffs were of questionable legal validity and could result in refunds payable to Defendants; and

81.     (c) ORS 646.608(1)(t), in that Defendants failed to disclose, concurrent with the tender or delivery of their goods, the material fact that the prices charged reflected IEEPA tariffs that were the subject of pending legal challenge and that, if the tariffs were invalidated, Defendants would be entitled to refunds while consumers would not.

82.     Defendants' conduct constitutes unfair, unconscionable, and deceptive acts and practices in trade or commerce. Defendants engaged in unfair and deceptive acts by: (i) charging customers retail prices that incorporated an unlawful IEEPA tariff-related cost component; and (ii) retaining tariff refunds despite having passed the costs to their customers. Defendants' conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.

83.     Defendants' acts and omissions complained of throughout this Complaint were willful, knowing, and undertaken with reckless disregard for the fact that, at the time they imposed tariff-driven price increases on consumers, the IEEPA tariffs were of questionable legality. On May 28, 2025, a three-judge panel of the U.S. Court of International Trade ruled the IEEPA tariffs unlawful in V.O.S. Selections, Inc. v. United States. On August 29, 2025, the U.S. Court of Appeals for the Federal Circuit, sitting en banc, affirmed that ruling in a 7-4 decision, V.O.S. Selections, Inc. v. Trump, 149 F.4th 1312 (Fed. Cir. 2025). Throughout 2025 and continuing through February 24, 2026, numerous importers challenged the legality of the IEEPA tariffs in the United States Court of International Trade, arguing that the President lacked statutory authority under IEEPA

to impose tariffs of that nature. Defendants' own December 21, 2025 protective action in Columbia Brands USA, LLC v. United States, No. 25-00855 (Ct. Int'l Trade), is conclusive evidence that Defendants understood, no later than December 21, 2025, that the IEEPA tariffs were potentially unlawful and refundable. Defendants further publicly disclosed in successive SEC filings that the IEEPA tariffs were increasing the cost of products they sourced from outside the United States and sold within the United States, and that Defendants intended to mitigate the impact through pricing and other measures. Defendants imposed and maintained tariff-driven price increases throughout the period when the legality of the IEEPA tariffs was being adjudicated and after the Federal Circuit's en banc affirmance, and Defendant Columbia Sportswear continued to maintain SOX-certified disclosures of its "high-single digit" Spring 2026 and Fall 2026 U.S. price increases as a tariff-mitigation tactic notwithstanding the well-publicized challenges to the underlying IEEPA tariffs. Defendants' conduct was, at a minimum, reckless and knowing within the meaning of ORS 646.638(8).

84.    Defendants' conduct also constitutes unfair business acts and practices because it caused substantial injury to consumers that was not reasonably avoidable by those consumers—who had no meaningful ability to contest or avoid tariff-related price components embedded in Defendants' retail and wholesale pricing at the point of purchase—and the harm to consumers is not outweighed by any countervailing benefit to consumers or competition.

85.    Plaintiff and members of the putative Class suffered an ascertainable loss of money as a direct result of Defendants' unlawful trade practices, having paid tariff-inflated

prices for Defendant-branded products that would not have been imposed absent the unlawful IEEPA tariff regime.

86.    Plaintiff and members of the putative Class are entitled to recover the greater of their actual damages or statutory damages of $200 per Class member under ORS 646.638(1) and (8), attorney fees, and costs as available under the Oregon Unlawful Trade Practices Act, including ORS 646.638.

## COUNT II
## UNJUST ENRICHMENT
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

87.    Plaintiff incorporates the foregoing allegations as if fully stated herein.

88.    Under Oregon law, an unjust-enrichment claim arises where the defendant has received a benefit at the plaintiff's expense and the retention of that benefit would be unjust under the circumstances. See Larisa's Home Care, LLC v. Nichols-Shields, 362 Or. 115, 127–28, 404 P.3d 912 (2017) (adopting the framework of the Restatement (Third) of Restitution and Unjust Enrichment); see also Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011) ("A person who is unjustly enriched at the expense of another is subject to liability in restitution."). A defendant is unjustly enriched when (1) a benefit is conferred upon the defendant, (2) the defendant is aware of or appreciates the benefit, and (3) it would be unjust for the defendant to retain the benefit without paying for its value.

89.    Plaintiff and the members of the Class conferred monetary benefits to Defendants by paying elevated prices for products that included unlawful IEEPA tariff costs.

90. Defendants have been unjustly enriched because they collected and retained retail payments from Plaintiff and the Class that included amounts attributable to IEEPA tariff costs, while also retaining the right to seek or receive refunds, credits, reliquidation, or other recovery of those same tariff costs from the government.

91. Defendants knew and appreciated the benefit they received because they set, charged, and retained retail prices that included tariff-related cost increases paid by Plaintiff and the Class. At minimum, after the Supreme Court's invalidation of the IEEPA tariffs and subsequent refund-related proceedings, Defendants knew or should have known that any refund or recovery of IEEPA duties would correspond to tariff costs that consumers had already economically borne through Defendants' prices.

92. Defendants' retention of these benefits is unjust and inequitable now that Defendants are positioned to retain both the tariff-related amounts collected from consumers and the corresponding refund rights or proceeds from the government, a circumstance Defendants themselves have acknowledged in their December 21, 2025 pleading in Columbia Brands USA, LLC v. United States, No. 25-00855 (Ct. Int'l Trade), in which Defendants pleaded their entitlement to refund of all IEEPA tariffs they paid, and in Defendant Columbia Sportswear's Form 10-Q for the quarter ended March 31, 2026, in which Columbia Sportswear admitted having paid approximately $80 million in IEEPA tariffs and described its active pursuit of refunds of those tariffs.

93. The IEEPA tariffs were subsequently determined to lack statutory authorization, making the tariff payments refundable or recoverable by importers such as Defendants.

94.    In Oregon, constructive trusts are remedies employed by courts to avoid unjust enrichment when no other adequate remedy is available. Tupper v. Roan, 349 Or. 211, 220–21, 243 P.3d 50 (2010). Any refund proceeds Defendants receive from CBP through the CAPE process or otherwise are traceable funds that, in equity, are held in constructive trust for the benefit of Plaintiff and the Class.

95.    There is no adequate remedy at law for Plaintiff and the Members of the Class, as Defendants have established no mechanism to refund tariff costs to consumers, and consumers have no direct statutory cause of action to recover IEEPA tariffs from the government.

96.    Under principles of equity and good conscience, it would be unjust to permit Defendants to retain both (a) the elevated prices consumers paid due to tariff pass-through pricing, and (b) government refunds of those same tariff costs.

97.    Plaintiff and the other members of the Class are entitled to restitution in the amount by which Defendants have been unjustly enriched, and an order requiring Defendants to disgorge any profits or other benefit they have retained as a result of their unjust and unlawful conduct, including the imposition of a constructive trust over any IEEPA tariff refund proceeds Defendants have received or may receive.

## COUNT III
### MONEY HAD AND RECEIVED
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

98.    Plaintiff incorporates all of the allegations and statements made above as if fully stated herein.

99.     Under Oregon law, money had and received is an alternative restitution theory available where a defendant has received money belonging in equity to the plaintiff. See Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011); Tupper v. Roan, 349 Or. 211, 218–22, 243 P.3d 50 (2010) (discussing equitable principles governing restitution of funds traceable to wrongful conduct).

100.     This Count is pleaded in the alternative to Count II. While Count II (Unjust Enrichment) addresses the inequity of Defendants' retention of consumer overcharges already collected, this Count more particularly addresses Defendants' anticipated receipt and retention of government refund proceeds that, in equity, represent a return of costs that were economically borne by Members of the Class, not by Defendants.

101.     Defendants received money from Plaintiff and from each Member of the proposed Class in the form of higher prices proximately caused by the pass-through of IEEPA tariff costs.

102.     Defendants received this money in order to recoup the IEEPA tariffs that Defendants Columbia Brands USA, LLC and Prana Living, LLC, as the importers of record, had paid to U.S. Customs and Border Protection as duties on imported goods.

103.     The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization. Learning Res., Inc. v. Trump, 2026 WL 477534 (U.S. Feb. 20, 2026).

104.     Defendants are now positioned to recover refunds of the IEEPA tariffs from the U.S. government through the CAPE refund process and the protective action Defendants Columbia Brands USA, LLC and Prana Living, LLC filed in the Court of

International Trade, *Columbia Brands USA, LLC v. United States*, No. 25-00855 (Ct. Int'l Trade Dec. 21, 2025). Upon information and belief, Defendants have not paid or distributed any portion of these anticipated refunds to Plaintiff or other consumers who bore the economic burden of the tariffs through elevated prices.

105.    The money that Defendants will recover from the government as IEEPA tariff refunds represents, in equity, a return of money that belonged to Plaintiff and to each Member of the proposed Class—the consumers who paid elevated prices due to Defendants' tariff pass-through.

106.    Defendants have not returned this money to Plaintiff or the Class.

107.    In equity and good conscience, Defendants should not be permitted to retain the funds they recover or have recovered from the government as IEEPA tariff refunds. Those funds belong, in equity, to Plaintiff and the Class, and Defendants are obligated to return them.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that the Court enter an order awarding the following relief as pled in the foregoing and judgment against Defendants as follows:

A. An Order certifying the Class, defining the Class as requested herein, appointing Plaintiff as Class representative, and appointing her counsel as Class counsel;

B.  An award of the greater of actual damages or statutory damages of $200 per Class member under ORS 646.638(1) and (8), any actual, compensatory, and enhanced damages permitted to Plaintiff and other Class Members, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

C.  An order declaring that any refund, credit, reliquidation proceeds, or settlement payment that Defendants receive or have received from U.S. Customs and Border Protection, the U.S. Treasury, or any other governmental authority on account of IEEPA tariffs paid during the Class Period is held in constructive trust for the benefit of Plaintiff and the Class, and an order enjoining Defendants from dissipating, transferring, commingling, or otherwise diminishing such refund proceeds pending final judgment in this action;

D.  An equitable accounting of all IEEPA-related duties paid by Defendants during the Class Period, all CAPE refund applications and other refund requests submitted by Defendants to U.S. Customs and Border Protection, and all refund proceeds received or anticipated to be received by Defendants;

E.  An award of reasonable attorneys' fees, costs, and other litigation expenses;

F.  An award of pre- and post-judgment interest as available under law;

G.  The disgorgement of any funds in the amount Defendants were unjustly enriched by their conduct; and

Page 37 — CLASS ACTION ALLEGATION COMPLAINT

H. Such further and other relief as the Court deems just, reasonable, and equitable.

**Dated:** June 9, 2026

Respectfully submitted,
EVETTE TAN, on behalf of herself and others
similarly situated.
By: /s/ Rick Klingbeil

Rick Klingbeil, OSB #933326
RICK KLINGBEIL, PC
1826 NE Broadway
Portland, OR 97232
Tel: (503) 490-6763
rick@klingbeil-law.com

Brady Mertz, OSB #970814
BRADY MERTZ, PC
685 Church St. NE
Salem, OR 97301
Tel: (503) 385-0121
brady@bradymertz.com

Myles McGuire, Pro Hac Vice Forthcoming
Andrew T. Heldut, Pro Hac Vice Forthcoming
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
aheldut@mcgpc.com

Attorneys for Plaintiff and the putative Class
